## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

CASE NO.: 1:23cv21040

AT LAW AND IN ADMIRALTY

JOHN DOE and JANE DOE, as
parents and natural guardians
of MARY DOE, a minor child,

     Plaintiff,

vs.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,
and ONESPAWORLD (BAHAMAS)
LTD.

     Defendant.

_____/

### COMPLAINT FOR DAMAGES

COME NOW the Plaintiffs, JOHN DOE and JANE DOE, as parents and natural guardians of MARY DOE (hereinafter "MARY"), a minor child, hereby sue the Defendants, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter "CARNIVAL") and ONESPAWORLD (BAHAMAS) LTD (hereinafter "ONESPA"), and file this Complaint, and allege:

### GENERAL ALLEGATIONS

1. This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest, costs, and attorney's fees.

2. Federal subject matter jurisdiction arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333 and § 1332, and is being

filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant, CARNIVAL.

3. JOHN DOE and JANE DOE, as parents and natural guardians of MARY DOE, a minor child, are sui juris, and are citizens and permanent residents of Oneida County, New York.[1]

4. CARNIVAL was and is a foreign corporation with its principal place of business in Miami, Florida. At all times material hereto, CARNIVAL owned and/or operated the cruise ship on which the subject rape occurred.

5. ONESPA was and is a Florida company with its principal place of business at 770 South Dixie Highway, Suite 200, Coral Gables, Florida 33126.

6. CARNIVAL, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

   a. Operated, conducted, engaged in or carried on a business venture in this state and/or county;

   b. Had an office or agency in this state and/or county;

   c. Engaged in substantial activity within this state; and/or

   d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

7. ONESPA, at all times material hereto, personally or through an agent, in the County and District in which this Complaint is filed:

   a. Operated, conducted, engaged in, or carried on a business venture in this state and/or county;

---

[1] Due to the sexual nature of this matter and the age of the victim, Plaintiffs request privacy and confidentiality and respectfully request to proceed under the pseudonyms "John Doe" and "Jane Doe" for parents, and "Mary Doe" for the minor child. Defendants will not be prejudiced and are aware of their true identities. *Doe v. Carnival, et al.*, 470 F.Supp.3d 1317, 1320 (S.D. Fla. 2020).

b. Had an office or agency in this state and/or county;

c. Engaged in substantial activity within this state;

d. Committed one or more of the acts stated in Fla.Stat. §§48.081, 48.181, or 48.193; and/or

e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state;

8. On or about March 4, 2023, CARNIVAL owned and/or operated and/or managed and/or maintained and/or controlled as a common carrier a passenger cruise ship known as the *Carnival Sunrise* which included a spa/fitness center area known as Cloud 9.

9. CARNIVAL owed MARY the non-delegable duty to protect the passengers on the cruise ship, including MARY, from the intentional torts of its employees and/or crew members.  Further, it owed "…a non-delegable duty to protect their passengers from crew member assaults and thereby safely transport their cruise passengers."  *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 913 (11th Cir. 2004).

10. On or about March 4, 2023, Cloud 9 was operated, managed and/or overseen by ONESPA.

11. ONESPA was at all material times: under the direction and control of CARNIVAL; and/or acted as the agent of CARNIVAL; and/or was the employer of the individual dressed in black who wore a CARNIVAL tag that said his name and "Philippines" and who worked as a fitness instructor on the *Carnival Sunrise* during the 8:00p.m. and 9:00p.m. hours of March 4, 2023 (hereinafter "Assailant[2]").

---

[2] CARNIVAL and ONESPA have each refused to provide Plaintiffs with the name of the assailant and thus Plaintiffs refer to him herein as "Assailant."

12. ONESPA, as the onboard agent of CARNIVAL and/or that was under the direction and control of CARNIVAL and/or was the employer of Assailant, shared in the duty of absolute protection owed to passengers like MARY who traveled with the common carrier, CARNIVAL. *Doe v. Carnival, et al.*, 472 F.Supp.3d 1187, 1192 (S.D. Fla. 2020) citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 913 (11th Cir. 2004).

13. At all times material Assailant was a borrowed servant of CARNIVAL and subject to the control and orders of the *Carnival Sunrise*'s Officers, including the Captain. As such, CARNIVAL employed Assailant.

14. At all times material CARNIVAL's policies and procedures, as well as the *Carnival Sunrise*'s Captain's Rules, forbade crewmembers from any sexual contact with passengers.

15. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**ALLEGATIONS COMMON TO ALL COUNTS**

16. **DATE AND TIME OF INCIDENT**.  The incident occurred at nighttime, on Saturday, March 4, 2023.  CARNIVAL is in possession of video footage that shows MARY DOE ascending a staircase in the fitness center at some point in the 8:00p.m. hour prior to the sexual assault, and CARNIVAL is in possession of video footage that shows MARY DOE descending the same staircase, following the sexual assault, many minutes later, at some point in the 9:00p.m. hour.

17. **LOCATION OF INCIDENT**.  The incident occurred on the vessel in the fitness center onboard the *Carnival Sunrise*, a ship in navigable waters while the Plaintiffs were passengers aboard.  Accordingly, the Plaintiffs' claims are governed by the General Maritime Law.

18. **STATUS OF PLAINTIFFS AS OF DATE AND TIME OF INCIDENT**.  At all times material hereto, Plaintiffs and their minor child daughter were passengers on the subject cruise ship described herein and, accordingly, were invitees while on the vessel.  The Plaintiffs do not have a copy of the subject ticket but CARNIVAL does.

19. **BACKGROUND FOR THE INCIDENT: THE FAILURE TO SUPERVISE AND MONITOR.**  At all times material, CARNIVAL claimed: "The safety and security of our guests is our top priority."

20. At all times material, CARNIVAL marketed its cruises to families with children.

21. At all times material, CARNIVAL provided on the *Carnival Sunrise* facilities and functions for families with children.

22. On its website and marketing materials available at https://www.carnival.com/awaywego/cruising-fun/what-to-expect/reasons-why-your-teen-will-love-going-on-a-cruise, CARNIVAL expressly induces parents like JOHN DOE and JANE DOE to give teenagers freedom to explore the cruise ship unsupervised under the guise of "safe" independence by stating: "This means that teens can take advantage of tons of activities onboard and have their own sense of (safe) independence while they do it."

23. At all times material JOHN DOE and JANE DOE detrimentally relied on CARNIVAL's stated commitment to the safety and security of cruise ship guests and teenagers and permitted MARY to explore the ship unsupervised.

24. At no time did CARNIVAL warn Plaintiffs or any other adults about instructing their children to not be alone with a crewmember.

25. MARY did not consent to the sexual contact described herein.

26. **DESCRIPTION OF THE INCIDENT:**  On or about March 4, 2023, one of CARNIVAL's employees/crewmembers ("Assailant") sexually assaulted MARY.

27. At the time she was sexually assaulted, MARY was a 17-year-old female minor traveling with her family.

28. At night on March 4, 2023, MARY went to the fitness center with two (2) teenage cousins from her family (hereinafter "Cousins").

29. While at the fitness center MARY was approached multiple times by Assailant under the guise that he was assisting her.

30. Despite MARY not requesting any assistance, Assailant manipulated the seat of a machine she was utilizing.

31. Minutes later Assailant returned to the area where MARY was exercising, looked at her, shook his head, and said: "too stiff, need to stretch." He then said "Come with me after you finish working out."

32. Minutes later, Assailant returned to the area where MARY was and said, "are you done?" MARY responded by saying, "I guess."

33. Assailant did not help her stretch in view of surveillance cameras or other exercisers on the first floor of fitness center.

34. Instead, Assailant led MARY up the fitness center stairs to a secluded area behind a wall that he knew did not have any surveillance cameras.

35. Assailant put down a yoga mat and instructed MARY to lay down on it.

36. Assailant began to rub MARY's legs claiming this was a stretch to help her.

37. Assailant said that because she was so stiff he was going to give her a massage.

38. Assailant said to MARY, "you're 18 right?" and MARY replied, "No."

39. Assailant took out a bottle of oil and massaged MARY's legs.

40. Assailant told MARY not to tell anyone because this is a free massage.

41. Assailant asked MARY to remove her shorts and MARY said "No."

42. Assailant put his hands up MARY's shorts and MARY said "No."

43. Assailant ignored MARY and inserted with force his fingers into her vagina.

44. MARY had never had another person insert their fingers into her vagina.

45. MARY said: "it hurts" and Assailant told her: "just breathe."

46. MARY felt her body freeze up and she could not move any parts of her body.

47. MARY was in fear for her safety and was just hoping for the rape/sexual assault to be over as quickly as possible.

48. In addition to raping MARY in her vagina, Assailant sexually assaulted MARY by groping/rubbing her buttocks, anus, and breasts.

49. After an extended period of time of raping and sexually assaulting MARY, Assailant ordered MARY to turn over onto her stomach.

50. MARY, still in fear for her safety, complied with the order, turned over onto her stomach, and Assailant resumed molesting her.

51. MARY closed her eyes and hoped for it to be over as soon as possible.

52. MARY did not consent to the rape or to any of the improper sexual touching.

53. While MARY was being raped and sexually assaulted, Cousins were still exercising on the first floor of the fitness center, until they noticed MARY had been gone too long.

54. Initially, Cousins thought MARY went to the restroom.

55. After a significant period of time had passed, Cousins thought it was highly unusual that MARY had not returned, especially since MARY's personal items remained on the first floor of the fitness center.

56. Shortly thereafter MARY's Cousins began searching for MARY.

57. Ultimately Cousins found MARY lying on her stomach with the Assailant over her.

58. Assailant's hands were on MARY's legs.

59. Upon seeing Cousins, Assailant stopped what he was doing as if he had just gotten caught doing something wrong.

60. Assailant wiped his oily hands on his pants and said he was helping MARY stretch.

61. MARY asked Cousins what time it was.

62. A Cousin responded with the time and MARY said, "I've got to go."

63. MARY proceeded to walk fast, red in the face, holding back tears, and was beginning to hyperventilate, which she had never experienced in her young life.

64. Once MARY reached her cabin, she burst into tears and hyperventilated.

65. Female Cousin asked, "did he touch you?" and MARY said, "yeah."

66. Female Cousin ran out of the cabin to confront Assailant.

67. Female Cousin accosted Assailant at the fitness center.

68. Assailant appeared nervous.

69. Female Cousin said: "what the fuck you do to my cousin?" to which Assailant said: "I don't know.  What did she say I did?"

70. Female Cousin told her family what happened.

71. MARY's family reported the rape and sexual assault to Guest Services within minutes of the attack concluding.

72. In the past ten (25) years, CARNIVAL has investigated hundreds of sexual assault/rape allegations.

73. Pursuant to CARNIVAL's own policies and procedures, CARNIVAL was supposed to connect MARY immediately with a member of the onboard CARE team to assist her with post-rape procedures and to limit her trauma.

74. CARNIVAL failed to immediately connect MARY with a member of the onboard CARE team.

75. Pursuant to CARNIVAL's own policies and procedures, CARNIVAL was supposed to take MARY to the medical center for treatment. Instead, CARNIVAL sent multiple male security officers to MARY for her to give a statement.

76. Moreover, CARNIVAL recorded MARY giving her statement without first asking her for permission to record her.

77. MARY provided CARNIVAL security with the sports bra, shorts, and underwear she wore during the rape and sexual assault.

78. All of the articles of clothing she gave CARNIVAL contained oil that Assailant rubbed on her.

79. MARY went with her parents to the medical center and bravely allowed CARNIVAL's doctor to conduct a sexual assault examination.

80. MARY told FBI agents what Assailant did to her.

81. Assailant's acts were intentional, willful, wanton, outrageous, and in reckless disregard and indifference of MARY's rights.

82. Moreover, Assailant's acts were calculated. He took advantage of the ship's failure to have meaningful security.

83. Assailant, during the course and scope of his employment with ONESPA on CARNIVAL's cruise ship, violated MARY's person, integrity, health, safety, and well-being.

84. Following the rape and sexual assault, CARNIVAL refused to provide MARY and her parents with the name of Assailant, a member of CARNIVAL's crew.

85. Following the rape and sexual assault, ONESPAWORLD refused to provide MARY and her parents with the name of Assailant, ONESPAWORLD's employee.

86. Following the rape and sexual assault, CARNIVAL refused to provide MARY and her parents with access to any video showing MARY with Assailant.

87. Following the rape and sexual assault, in violation of their own policies and procedures, CARNIVAL refused to provide MARY and her parents with a copy of MARY's medical records.

88. **THESE ACTIONS ARE A BASIS FOR PUNITIVE DAMAGES.**  These actions by Assailant, CARNIVAL and ONESPAWORLD's crewmember/employee, for which Defendants are vicariously liable, display wanton, willful and outrageous conduct and form a basis for punitive damages against CARNIVAL and ONESPAWORLD under the General Maritime Law.  *Hall v. Carnival Corporation*, 536 F.Supp.3d 1306 (S.D. Fla. 2021); *Amparo v. Classica Cruise Operator Ltd.*, 20-CV-60896-RAR, 2021 WL 4989916 (S.D. Fla. 2021).

89. **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN REGARDS TO SEXUAL ASSAULT AND BATTERY.**  The general maritime law, state and federal, imposes a strict liability on the common carrier, including the cruise line herein, for sexual assault, sexual battery and rape.   This is a "special non-delegable duty owed by the carrier to the passenger".  *Doe v. Celebrity Cruises, Inc.*, 394 F. 3d 891, 907 (11th Circuit 2004); *New Orleans and N.E.R. Co. v. Jopes,* 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919 (1891); *New Jersey Steam-Boat Co. v. Brockett*, 121 U.S. 637, 7 S.Ct. 1039, 30 L.Ed. 1049 (1887); thus, the cruise line has an "unconditional responsibility"  for its employee's misconduct. *Tullis v. Fidelity and Casualty Company of New York,* 397 F. 2d 22, 23 (5th Cir. 1968) as cited by the 11th Circuit in *Doe v. Celebrity Cruises Inc.*, 394 F. 3d at 909.  Stated otherwise, "it is a widely adopted rule that common carriers owe such an absolute duty to their passengers". *Morton v. De Oliveira*, 984 F. 2d 289, 291-92 (9th Cir. 1993) as cited in *Doe v. Celebrity Cruises Inc.* 394 F. 3d at 911.  See, *Nadeau v. Costley*, 634 S. 2d 649,

652-3 (Fla. 3d DCA 1994) and *Commodore Cruise Line, Ltd. v. Kormendi*, 344 S. 2d

896 (Fla. 3d DCA 1977).

90. **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN GENERAL.**  The

Defendant owes a "duty to exercise reasonable care for the safety of its passengers"

including the Plaintiff herein.  See, *Hall vs. Royal Caribbean Cruises, Limited*, 888

So.2d 654 (Fla. 3d DCA 2004).   The Defendant also owes a "duty to exercise

reasonable care under the circumstances".  See, *Harnesk vs. Celebrity Cruise Lines,

Inc*, 1992 AMC 1472, 1991 WL 329584 (S.D. Fla. 1991).  The Defendant's "duty is

to warn of dangers known to the carrier in places where the passenger is invited to,

or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited, S.A.*,

475 So.2d 248 (Fla. 3d DCA 1985).

91. The cruise line voluntarily assumed or voluntarily undertook responsibility to

provide safety and security and reasonably safe and well-trained employees for its

passengers, and thus created a duty to provide these services with reasonable

care under the circumstances. See, e.g., *Goldberg v. Florida Power and Light

Company,* 899 So.2d 1105 (Fla. 2005); *Kerfoot v. Waychof*, 501 So.2d 588 (Fla.

1987); *Horton v. Freeman,* 943 So.2d 1016 (Fla. 4th DCA 2006); *Estate of Sharp v.

Omnicare, Inc.*, 879 So. 2d 34 (Fla. 5th DCA 2004); and *Roos v. Morrison*, 913

So.2d 59 (Fla. 1st DCA 2005).

**COUNT I - VICARIOUS LIABILITY OF CARNIVAL
FOR SEXUAL ASSAULT OF PASSENGER BY CREWMEMBER**

92. The Plaintiffs, hereby adopt and re-allege each and every allegation in

paragraphs 1 through 91, above.

93. On March 4, 2023, CARNIVAL's employee/crewmember committed the

intentional acts of rape, sexual battery, sexual assault, and sexual molestation

and the intentional act of aggravated sexual abuse on MARY in violation of 18 U.S.C. Sec. 2241(a).

94. CARNIVAL and Assailant made it clear that he was an employee/crewmember. Assailant was wearing a Carnival badge, detailing his name and nationality. CARNIVAL gave him gave him unfettered access to the fitness center and controlled his schedule.  Hence, based on this information Plaintiffs' information and belief is that Assailant held a position onboard the *Carnival Sunrise.*

95. Assailant's actions were willful, intentional, wanton, outrageous, and in reckless disregard and indifference for the rights of others and for the safety and security of its passengers, including MARY herein, and therefore are a basis for punitive damages against CARNIVAL under the Restatement (Second) of Torts 909 and under the General Maritime Law.

96. CARNIVAL is vicariously liable and responsible for the criminal acts of its crewmember and/or employee under *respondeat superior* and under the strict liability of the cruise line for the criminal, wrongful, and violent actions of its onboard crew.

97. Assailant's outrageous conduct committed onboard the ship, and in the course and scope of his employment, are attributable to CARNIVAL, have caused MARY to suffer damages, past and future, including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. MARY has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiffs demand judgment against CARNIVAL for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by MARY including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

### COUNT II - VICARIOUS LIABILITY OF ONESPA
### FOR SEXUAL ASSAULT OF PASSENGER BY CREWMEMBER

98. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 91, above.

99. On March 4, 2023, ONESPA's employee committed the intentional acts of rape, sexual battery, sexual assault, and sexual molestation and the intentional act of aggravated sexual abuse on MARY in violation of 18 U.S.C. Sec. 2241(a).

100. Assailant's actions were willful, intentional, wanton, outrageous, and in reckless disregard and indifference for the rights of others and for the safety and security of its passengers, including MARY herein, and therefore are a basis for punitive damages against ONESPA under the Restatement (Second) of Torts 909 and under the General Maritime Law.

101. ONESPA is vicariously liable and responsible for the criminal acts of its employee under *respondeat superior* and under the strict liability of the employer for the criminal, wrongful, and violent actions of its employee.

102. Assailant's outrageous conduct committed onboard the ship, and in the course and scope of his employment, are attributable to ONESPA, have caused MARY to suffer damages, past and future, including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. MARY has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiffs demand judgment against ONESPA for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by MARY including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

### COUNT III - VICARIOUS LIABILITY OF CARNIVAL: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS OF PASSENGER BY CREWMEMBER

103. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 91, above.

104. This is an action for intentional infliction of emotional distress of a passenger by a crewmember.  The conduct of the perpetrator here was extreme and outrageous.  The perpetrator intended to inflict emotional distress or was reckless in his actions.  The intentional or reckless actions of the perpetrator in fact did inflict on the Plaintiff extreme emotional distress.

105. The actions of the CARNIVAL crew and/or employee were unlawful and in violation of criminal statute 18 U.S.C. Sec. 2241 (aggravated sexual abuse).

106. CARNIVAL is liable and responsible for the intentional infliction of emotional distress of the perpetrator under *respondeat superior* and under the strict liability of the cruise line for the criminal, wrongful, and/or violent actions of its onboard crew.

107. As a result of the intentional infliction of emotional distress, MARY has suffered damages and injuries including but not limited to economic damages in the past and in the future on a permanent basis including but not limited to expenses for medical and psychological care and treatment, household and other expenses, past lost income, and future loss of the ability or capacity to earn income; and non-economic damages in the past and in the future on a permanent basis including bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment and disability, inconvenience, scarring, and disfigurement, all of which in the past and in the future.

WHEREFORE, the Plaintiffs demand judgment against CARNIVAL for all damages to which they are entitled under the General Maritime Law and otherwise including but

not limited to: economic damages suffered in the past and in the future on a permanent basis by MARY including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

### COUNT IV - VICARIOUS LIABILITY OF ONESPA: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS OF PASSENGER BY CREWMEMBER

108. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 91, above.

109. This is an action for intentional infliction of emotional distress of a passenger by a crewmember/employee. The conduct of the perpetrator here was extreme and outrageous. The perpetrator intended to inflict emotional distress or was reckless in his actions. The intentional or reckless actions of the perpetrator in fact did inflict on the Plaintiff extreme emotional distress.

110. The actions of the ONESPA crewmember and/or employee were unlawful and in violation of criminal statute 18 U.S.C. Sec. 2241 (aggravated sexual abuse).

111. At all times material hereto, the crewmember/employee that sexually assaulted MARY was hired and/or retained by, as well as in the employ of, ONESPA, for service as a crewmember during said voyage.

112. ONESPA is liable and responsible for the intentional infliction of emotional distress of the perpetrator under *respondeat superior* and under the strict liability

of the maritime employer for the criminal, wrongful, and/or violent actions of its onboard crew.

113. As a result of the intentional infliction of emotional distress, MARY has suffered damages and injuries including but not limited to economic damages in the past and in the future on a permanent basis including but not limited to expenses for medical and psychological care and treatment, household and other expenses, past lost income, and future loss of the ability or capacity to earn income; and non-economic damages in the past and in the future on a permanent basis including bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment and disability, inconvenience, scarring, and disfigurement, all of which in the past and in the future.

WHEREFORE, the Plaintiffs demand judgment against ONESPA for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by MARY including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

## COUNT V - VICARIOUS LIABILITY OF CARNIVAL:
## FALSE IMPRISONMENT OF PASSENGER BY CREWMEMBER

114. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 91, above.

115. This is an action for false imprisonment.  The perpetrator falsely imprisoned MARY during his sexual attack on her.  The perpetrator restricted MARY's movement during the sexual attack and would not allow her to leave the secluded area of the fitness center during that time.

116. The actions of the CARNIVAL crewmember/employee in restricting MARY's movement during and in the course of this sexual attack were unlawful and/or were criminal.

117. CARNIVAL is vicariously liable and responsible for the intentional infliction of emotional distress of the perpetrator under *respondeat superior* and under the strict liability of the cruise line for the criminal, wrongful, and/or violent actions of its onboard crew.

118. As a result of the false imprisonment of MARY, she has suffered damages and injuries including but not limited to economic damages in the past and in the future on a permanent basis including but not limited to expenses for medical and psychological care and treatment, household and other expenses, past lost income, and future loss of the ability or capacity to earn income; and non-economic damages in the past and in the future on a permanent basis including bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment and disability, inconvenience, scarring, and disfigurement, all of which in the past and in the future.

WHEREFORE, the Plaintiffs demand judgment against CARNIVAL for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by MARY including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability

and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

## COUNT VI - VICARIOUS LIABILITY OF ONESPA: FALSE IMPRISONMENT OF PASSENGER BY CREWMEMBER

119. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 91, above.

120. This is an action for false imprisonment.  The perpetrator falsely imprisoned MARY during his sexual attack on her.  The perpetrator restricted MARY's movement during the sexual attack and would not allow her to leave the secluded area of the fitness center during that time.

121. The actions of the ONESPA employee in restricting the movement MARY DOE during and in the course of this sexual attack were unlawful and/or were criminal.

122. ONESPA is vicariously liable and responsible for the intentional infliction of emotional distress of the perpetrator under *respondeat superior* and under the strict liability of the maritime employer for the criminal, wrongful, and/or violent actions of its onboard crew.

123. As a result of the false imprisonment of MARY, she has suffered damages and injuries including but not limited to economic damages in the past and in the future on a permanent basis including but not limited to expenses for medical and psychological care and treatment, household and other expenses, past lost income, and future loss of the ability or capacity to earn income; and non-

economic damages in the past and in the future on a permanent basis including bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment and disability, inconvenience, scarring, and disfigurement, all of which in the past and in the future.

WHEREFORE, the Plaintiffs demand judgment against ONESPA for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by MARY including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

## COUNT VII - DIRECT LIABILITY OF CARNIVAL: NEGLIGENT PROCEDURES AND OPERATIONS

124. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 91, above.

125. This is an action for negligent procedures and operations.  CARNIVAL owes to its passengers a duty to use reasonable care under the circumstances, including to the minor Plaintiff MARY.

126. CARNIVAL knew or in the exercise of reasonable care should have known that onboard its cruise ships there have been numerous assaults, batteries, sexual assaults and batteries, rapes, and attacks perpetrated by crew on passengers. Given the circumstances of the job itself, and the conduct of the crew onboard

the ships—more fully described herein— assault, battery, and sexual assault and battery by crew members is an ongoing and repetitive problem and therefore foreseeable to take place in any place to which the crew has access without surveillance cameras, which in this case is the second floor of the spa/ fitness center of the ship.

127. The circumstances under which CARNIVAL's duty exists include that it operates a ship that functions like a hotel, offering rooms where people can sleep, dress, and go about their private affairs.

128. The circumstances also include that CARNIVAL voluntarily undertakes to market to families with children and represents to the public that its cruise ships are appropriate for families.  They include that CARNIVAL also provides facilities and functions for families with children, including teen programs and activities onboard and thus reassure the parents of children and teens that the ship is safe for these groups.  They include that CARNIVAL takes people onboard its ships to isolated environment not connected to land.  And they include that there is no governmental police force onboard any of the cruise ships, meaning that crewmembers who break the law are fully aware that they will receive no immediate legal consequences.

129. CARNIVAL's duty owed to its passengers, including MARY, is non-delegable and even the slightest negligence renders a carrier liable.

130. CARNIVAL breached its duty to exercise reasonable care under the circumstances in relation to security for and of its passengers, by its actions and conduct, including but not limited to the following:

a.  Failing to provide adequate security for its passengers, including MARY;

b.  Failing to have reasonable and proper methods of preventing crime;

c. Failing to have an adequate system in effect to prevent passengers from being sexually assaulted and battered by crewmembers aboard *Carnival Sunrise*;

d. Failing to implement reasonable and adequate safety and security policies, measures, and procedures necessary to protect and keep safe the passengers, especially minors, on the *Carnival Sunrise*.

e. Failing to prevent crewmembers from committing sexual assault, sexual battery, and sexual abuse on its passengers onboard the *Carnival Sunrise*, including the minor Plaintiff herein;

f. Failing to hire experienced security personnel;

g. Failing to provide an adequate number of security personnel aboard the *Carnival Sunrise* despite being notified on numerous occasions by its own security leadership that there is not an adequate amount of security officers on CARNIVAL's ships;

h. Failing to perform adequate security checks of the premises;

i. Failing to ensure the *Carnival Sunrise* had the same video surveillance as other ships that were in use in other parts of the world;

j. Failing to equip the *Carnival Sunrise* with video and security monitoring of areas where passengers have been and will be assaulted or battered;

k. Failing to install additional surveillance video cameras on the *Carnival Sunrise* after it learned of other sexual attacks on CARNIVAL ships that were seemingly purposely inflicted in public areas of CARNIVAL ships that did not have video surveillance to record the sexual attacks;

l. Failing to have adequate video surveillance in all areas of the fitness center to deter crewmembers from sexually assaulting passengers on the second floor of the fitness center of the *Carnival Sunrise*;

22

m. Failing to have a security team member dedicated to monitoring surveillance video cameras;

n. Failing to make it known to all crewmembers that there is a dedicated security team member monitoring the surveillance cameras;

o. Failing to utilize available data to conduct a social epidemiological analysis of crimes on its ships with the goal of targeted and specific strategies for preventing rape, sexual assaults, and sex-related incidents.

p. Failing to retain experts to utilize available data to conduct a social epidemiological analysis of crimes on its ships with the goal of targeted and specific strategies for preventing rape, sexual assaults, and sex-related incidents;

q. Failing to implement reasonable and proper procedures for the safety and security of the passengers onboard the ship including but not limited to security policies and procedures commensurate with the type of business conducted therein, namely an isolated party ship where passengers have a reasonable and justifiable expectation of feeling safe in all areas accessible to the public on the ship;

r. Failing to adequately manage the spa and fitness center aboard the vessel;

s. Failing to intervene and stop the rape and sexual assault once it began;

t. Failing to get a CARE team member to assist MARY immediately after being notified of the sexual assault;

u. Failing to get treatment for MARY right away;

v. Failing to consider MARY's well-being by having her tell male security members what occurred, prior to offering her a CARE team member or taking her to the medical center; and/or

w. Failing to consider MARY's well-being by recording her whilst she told male security members what occurred, without asking her if she was agreeable to being recorded.

131. CARNIVAL by its negligent procedures and operations proximately caused and allowed this rape and the injuries and damages suffered by MARY.  The injuries and damages suffered by MARY as a result of the negligence of the Defendant include but are not limited to economic damages in the past and in the future on a permanent basis including but not limited to expenses for medical and psychological care and treatment, household and other expenses, past lost income, and future loss of the ability or capacity to earn income; and non-economic damages in the past and in the future on a permanent basis including bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment and disability, inconvenience, scarring, and disfigurement, all of which in the past and in the future.

WHEREFORE, the Plaintiffs demand judgment against CARNIVAL for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by MARY including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all  court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

## COUNT VIII - DIRECT LIABILITY OF CARNIVAL:
## NEGLIGENT FAILURE TO WARN

132. The Plaintiffs, hereby adopt and re-allege each and every allegation in paragraphs 1 through 91, above.

133. This is an action for negligent failure to warn. CARNIVAL owes to its passengers a duty to use reasonable care under the circumstances, including to the minor Plaintiff MARY.

134. CARNIVAL knew or in the exercise of reasonable care should have known that onboard its cruise ships there have been numerous assaults, batteries, sexual assaults and batteries, rapes, and attacks perpetrated by crew on passengers. Given the circumstances of the job itself, and the conduct of the crew onboard the ships—more fully described herein— assault, battery, and sexual assault and battery by crew members is an ongoing and repetitive problem and therefore foreseeable to take place in any place to which the crew has access without surveillance cameras, which in this case is the second floor of the spa/ fitness center of the ship.

135. The circumstances under which CARNIVAL's duty exists include that it operates a ship that functions like a hotel, offering rooms where people can sleep, dress, and go about their private affairs.

136. The circumstances also include that CARNIVAL voluntarily undertakes to market to families with children and represents to the public that its cruise ships are appropriate for families. They include that CARNIVAL also provides facilities and functions for families with children, including teen programs and activities onboard and thus reassure the parents of children and teens that the ship is safe for these groups. They include that CARNIVAL takes people onboard its ships to isolated environment not connected to land. And they include that there is no

governmental police force onboard any of the cruise ships, meaning that crewmembers who break the law are fully aware that they will receive no immediate legal consequences.

137. CARNIVAL's duty owed to its passengers, including MARY, is non-delegable and even the slightest negligence renders a carrier liable.

138. CARNIVAL breached its duty to exercise reasonable care under the circumstances in relation warning or informing its passengers, by its actions and conduct, including but not limited to the following:

a. Failing to warn passengers that there are or may be sexual predators amongst CARNIVAL's crewmembers;

b. Failing to warn passengers that the cruise line does not properly investigate, screen, hire or retain crewmembers who have direct contact with passengers, and that the passengers should not trust the crewmembers;

c. Failing to adequately warn passengers aboard CARNIVAL's ships that there are real and significant dangers aboard the vessel, including that other passengers have been sexually assaulted by crewmembers, and by failing to advise passengers that a heightened degree of care should be exercised when dealing with the crewmembers aboard the vessel;

d. Failing to utilize available data to conduct a social epidemiological analysis of crimes on its ships with the goal of targeted and specific strategies for preventing rape, sexual assaults, and sex-related incidents.

e. Failing to retain experts to utilize available data to conduct a social epidemiological analysis of crimes on its ships with the goal of targeted and specific strategies for preventing rape, sexual assaults, and sex-related incidents;

f. Deliberately creating an environment whereby passengers would be deceived into believing that they are in a safe and friendly "family" environment where it is safe to interact with male crewmembers where, in reality, passengers are at risk of being targeted and attacked by sexual predators;

g. Concealing, suppressing, and mischaracterizing information involving prior incidents where passengers are victimized aboard CARNIVAL's vessels;

h. Protecting CARNIVAL's business interests and media image at the expense of the fundamental rights of the passengers and other members of the public who will be subjected to sexual assaults and batteries and otherwise victimized in the future;

i. Failing to warn parents of minor passengers, including Plaintiffs that the security systems and personnel onboard ship were not adequate to protect passengers from crewmembers attacking passengers in public areas of the ship;

j. Failing to warn parents of minor passengers, including Plaintiffs, that there were/are areas on the *Carnival Sunrise* that there are public areas of the subject ship that their children will frequent that are not equipped with surveillance video cameras;

k. Failing to warn passengers including Plaintiffs that subject ship had less video surveillance than other CARNIVAL ships and that therefore *Carnival Sunrise* was not as safe as other CARNIVAL ships;

l. Failing to warn parents of minors (including Plaintiffs) of the possibilities and/or dangers of sexual assault aboard the vessel at the hands of crewmembers; and/or

  m. Failure to warn parents of minors (including Plaintiffs) of the lack of adequate security aboard the *Carnival Sunrise*;

  n. Representing to passengers that there was adequate security aboard the vessel when, in fact, there was inadequate security aboard the vessel in terms of numbers and training; and/or

  o. Failing to warn passengers of the prevalence of sexual assaults on minors aboard CARNIVAL's ships;

139. CARNIVAL by its negligent failure to warn, proximately caused and allowed this rape and the injuries and damages suffered by MARY. The injuries and damages suffered by MARY as a result of the negligence of the Defendant include but are not limited to economic damages in the past and in the future on a permanent basis including but not limited to expenses for medical and psychological care and treatment, household and other expenses, past lost income, and future loss of the ability or capacity to earn income; and non-economic damages in the past and in the future on a permanent basis including bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life, physical impairment and disability, inconvenience, scarring, and disfigurement, all of which in the past and in the future.

WHEREFORE, the Plaintiffs demand judgment against CARNIVAL for all damages to which they are entitled under the General Maritime Law and otherwise including but not limited to: economic damages suffered in the past and in the future on a permanent basis by MARY including but not limited to expenses for medical and psychological care and treatment, household and other expenses, loss of income, and loss of the ability and capacity to earn income in the future; non-economic damages including but not limited to bodily injury, pain, suffering, mental anguish, loss of the enjoyment of life,

physical impairment, disability, inconvenience, scarring, and disfigurement; punitive damages; all court costs; all interest which accrues from the date of the incident on all economic and non-economic damages under the General Maritime Law; and any and all other damages which the Court deems just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial on all issues so triable.

DATED on this 16th day of March 2023.

DANIEL W. COURTNEY, P.A.
10800 Biscayne Blvd.
Suite 700
Miami, Florida 33161
Telephone: (305) 579-0008
Facsimile: (305) 358-7222

By:    s/ Daniel W. Courtney
Daniel W. Courtney, Esq.
Florida Bar No: 0499781
dc@danielcourtneylaw.com