UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 23-cv-21040-BLOOM/TORRES

MARY DOE,

    Plaintiff,

vs.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,
and ONESPAWORLD (BAHAMAS) LTD,

    Defendants.
_____/

### DEFENDANTS' MOTION FOR A LIMITED REOPENING OF DISCOVERY TO COMPEL PLAINTIFF TO FINISH COMPLYING WITH DISCOVERY OBLIGATIONS

Carnival Corporation d/b/a Carnival Cruise Line ("Carnival) and OneSpaWorld (Bahamas) Ltd. ("OSW") (collectively "Defendants"), requests that the Court reopen discovery in order to allow them to bring a discovery issue before Chief Magistrate Judge Torres so that they can compel Plaintiff and third-parties to produce information they started, but failed to finish, producing at the end of the discovery period.

### INTRODUCTION

Carnival served a request for production on Plaintiff and subpoenaed multiple members of her family to produce communications, including a WhatsApp group chat messages (the "WhatsApp chat") between them.[1] Plaintiff's counsel agreed to produce the WhatsApp chat on

---

[1] WhatsApp Messenger is an instant messaging and voice-over-IP service owned by technology conglomerate Meta. It allows users to send text, voice messages, and video messages. WhatsApp's client application runs on mobile devices, and can be accessed from computers. https://www.whatsapp.com/stayconnected, https://en.wikipedia.org/wiki/WhatsApp, and https://www.businessinsider.com/guides/tech/what-is-whatsapp-guide (last visited February 13, 2024).

behalf the subpoenaed parties. Carnival also requested that Plaintiff produce the WhatsApp group chat since she was on it. Plaintiff's counsel produced a portion of the WhatsApp chat, but information was missing. Plaintiff's counsel then produced more of the WhatsApp chat, but attachments and/or embedded information remains missing. Carnival worked in good faith to get this issue resolved prior to the discovery deadline by working with Plaintiff's counsel, but it was unable to get full cooperation. Carnival then sought a hearing to compel the remainder of the information shortly after the discover deadline: the delay was due to the volume of information that had to be digested to determine there was still additional missing information. The request for hearing was denied by Chief Magistrate Judge Torres because the discovery was closed.

There is good cause for the Court to partially modify the deadline and to allow Chief Magistrate Judge Torres to consider the merits of the issue.

## **BACKGROUND**

This case involves an alleged sexual assault. Plaintiff was just short of her 18th birthday. She alleges that she met an OSW fitness instructor named Mark Villanueva while working out in the fitness center on the Carnival *Sunrise*. He spoke with her and her cousins while they were working out in the fitness center about how to use the equipment and spa services. He offered to provide Plaintiff with stretching. Plaintiff and he went to a public area overlooking the fitness center and he stretched and massaged her muscles. Plaintiff alleges that he also touched the outside of her private parts or digitally penetrated her private parts during the massage. Mr. Villanueva was deposed and testified that he stretched and massaged Plaintiff, but he did not touch her private parts.

Plaintiff first told her family about the incident on the ship, and then they reported it to Carnival. Plaintiff was traveling with several family members. The family members were involved

with an altercation in the spa where Plaintiff's father threatened to throw Mr. Villanueva overboard. Family members, including Plaintiff's brothers, were also involved in an altercation in the medical center during which he had to be restrained. The family members made accusations that Carnival was tampering with evidence—later they admitted it was in fact turned over to the FBI.

The family members started researching attorneys and contacted Plaintiff's counsel while they were on the ship. The family went to the fitness center and took videos and conducted their own independent investigation. One family member, Yohevian Polanco, was particularly involved with the families investigation onboard the vessel, and this lawsuit. He went to the location where the sexually assaulted allegedly occurred and took videos and pictures as evidence. Mr. Polanco was also involved in collecting information and documents for Plaintiff to produce in discovery and "act[ed] as a liaison for getting documents to Mr. Courtney." *See* Infra, ¶ 9. The WhatsApp chat includes Mr. Polanco's efforts to collect and share information relating to the alleged assault.

Plaintiff and her family members shared information with each other, including about the cruise and Plaintiff's post-incident state, on a group WhatsApp chat. Defendants served subpoenas *duces tecum* on May 15, 2023, to produce documents and information, including this WhatsApp chat. Defendants requested that Plaintiff and the third-party witnesses, Jane Doe, John Doe, Yohevian Polanco, David Vargas, Lucia Agramonte, and Juan Rodriguez, preserve the information.

After Plaintiff failed to produce the WhatsApp chat in response to several subpoenas, Mr. Polanco testified that the WhatsApp chat existed. Instead of having multiple family members produce the WhatsApp chat, the parties agreed that Mr. Polanco would produce the WhatsApp chat. Mr. Polanco produced a Dropbox link containing a screen recording of the WhatsApp chat.

CASE NO.: 23-cv-21040-BB

The attachments, including photographs and voice notes, were inaccessible. Mr. Polanco re-sent the Dropbox link to include extracted images, videos, and messages.

After thoroughly reviewing and comparing the two WhatsApp chats produced by Mr. Polanco, Defendants realized the production was still incomplete. The WhatsApp chat, its messages, and its embedded files were voluminous, and Defendant had to carefully review each file and compare it to what was previously produced.

Once it became apparent that all the information was still not produced, Defendants again notified Plaintiff's counsel that there was an issue on January 2, 2024. Plaintiff's counsel refused to provide any more information.

## **RELEVANT DISCOVERY**

1. Defendants diligently pursued discovery as outlined in their Motion for Limited Continuance and Second Motion for Limited Continuance. [ECF No. 63 and 75].

2. Defendants deposed Plaintiff's family members, Mary Doe, John Doe, David Vargas, Lucia Agramonte, Yohevian Polanco, Juan Rodriguez, and Hugo Doe, Jr., respectively, on September 19, September 20, October 18, October 19, October 20, and November 16, 2023. On October 20, 2023, is when Carnival first learned of WhatsApp chat. Plaintiff did not previously disclose this information despite it being responsive to written discovery served on Plaintiff.

3. On May 9, 2023, Defendants served its First Request for Production to Plaintiff. The WhatsApp chat messages are responsive to the following requests:

> Request 27:
>
> All correspondence, including but not limited to emails and text messages, by and between you and anyone, except your attorney, concerning the subject matter of this case, including the Incident, or your injuries, prior injuries, and medical treatment for your injuries, from the time of the Incident to the present.

Request 29:

All records of correspondence, statements, or interviews given by you concerning the Incident, including the contact information for the entity that you communicated with.

*See* Request for Production[2] number twenty-seven and twenty-nine, attached as Ex. 1.

4. Plaintiff responded "None" to request number 27 and "See attached" to request number 29. Ex. 2 at p. 4. Plaintiff did not produce the WhatsApp chat or disclosed it existed. Defendants did not learn of the existence of the WhatsApp chat until almost five months later.

5. On May 15, 2023, Defendants served subpoenaed *duces tecum* on Hugo Doe (Plaintiff's father), Belkis Doe (Plaintiff's mother), and Yohevian Polanco (Plaintiff's cousin who assisted Plaintiff's in contacting and retaining counsel), David Vargas (Plaintiff's cousin who was in the fitness center at the time of the alleged incident) Lucia Agramonte (Plaintiff's cousin who Plaintiff first told about the alleged incident). Plaintiff's counsel accepted service and responded on their behalf.

6. The *duces tecum* requested:

Any and all e-mails, text messages, Facebook messages and posts, or Instagram messages and posts, Snap Chat messages and posts, or messages and posts from other social networking websites sent to or received from [Plaintiff] during the cruise aboard the Carnival *Sunrise* from March 2, 2023 and to the present.

-and-

Any and all e-mails, text messages, Facebook or Instagram messages, or messages from other social networking websites sent to or received from you during the cruise aboard the Carnival *Sunrise* from March 2, 2023 and to the present regarding the cruise and/or incident involving [Plaintiff].

---

[2] On May 18, 2023, Defendants served its Amended First Request for Production on Plaintiff. The requests served were identical to those served on May 9, 2023, and re-served for the sole purpose of replacing the case caption to update the named Plaintiff.

*See* Ex. 3.

7. On June 5, 2023, Plaintiff responded and served a Notice of Compliance of Subpoenas on behalf of Hugo Doe, Belkis Doe, Lucia Agramonte, David Vargas and Yohevian Polanco. Plaintiff did not object to any of the *duces tecum* requests and produced photographs, videos, and a handful of messages. The responses to the subpoena *duces tecum* would, and should have, included the WhatsApp chat, including all embedded documents, photographs, and videos. The WhatsApp chat was not identified or produced at this time.

8. On October 18, 2023, David Vargas was deposed. It was during his deposition that the existence of a WhatsApp group chat was first disclosed to Defendants. When asked if Mr. Vargas keeps in touch with Plaintiff, he testified they "have a group chat . . . there's a lot of people in it. Some of the people are like me, Mary Doe, Mary Doe's parents, a bunch of cousins, my parents, and my sister." Ex. 4 at 9:21–8. Mr. Vargas initially testified it was created during the cruise, and then testified he was unsure of when it was created. *Id*. at 11:14–12:10. At this time, the purpose and relevancy of the chat was unclear. Regardless, Defendants requested that Mr. Vargas preserve the conversation with his family. Correspondence from this WhatsApp chat was not produced.

9. On October 20, 2023, Yohevian Polanco was deposed. Mr. Polanco is Plaintiff's cousin who assisted in retaining Mr. Courtney. He has been involved in this lawsuit—he even attended Plaintiff's deposition. Mr. Polanco was also involved in gathering information and documents for Plaintiff to produce in discovery and "act[ed] as a liaison for getting documents to Mr. Courtney." *See* Ex. 5 at 35:12–17. Mr. Polanco testified about an email he sent to Plaintiff's counsel where Mr. Polanco stated, "I've added you and your team to the Google Drive folder with all the evidence that we've gathered as a family." *Id*. at 40:2–9.

10. During his deposition, Defendants asked Mr. Polanco if he had any correspondence with his family members about the lawsuit. *Id* at 33:1–5. Mr. Polanco testified that if he did, he would have provided them to Mr. Courtney. *Id.* at 33:6–7. Later, during his deposition, Mr. Polanco testified about the WhatsApp chat, which includes Plaintiff, David Vargas, Lucia Agramonte, who were on the cruise. *Id.* at 35:18–24. The WhatsApp chat was created shortly before the cruise and for the sole purpose of the subject. *Id*. Correspondence from this WhatsApp chat was not produced.

11. Defendants asked if anything had been deleted from the WhatsApp chat to which Mr. Polanco testified, "not that I can remember." *Id.* at 36:23. Plaintiff's cousins, Lucia Agramonte and David Vargas, confirmed that nothing had been deleted during their depositions. Defendants immediately requested that the WhatsApp chat be preserved, and nothing be deleted. *Id.* at 37:1–2. While on the record, Mr. Polanco agreed to produce, in response to his subpoena *duces tecum*, the WhatsApp messages he had with Plaintiff directly and the WhatsApp chat in its entirety. *Id.* at 73:5–11.

12. Immediately after Mr. Polanco's deposition concluded, Defendants' counsel e-mailed Mr. Polanco and reminded him about preserving and producing of the WhatsApp chat. *See* Ex. 6 at p. 2.

13. Plaintiff's cousins, Lucia Agramonte and David Vargas, who were with Plaintiff in the fitness center on the date of the alleged incident, testified about the existence of the WhatsApp chat. Neither Ms. Agramonte nor Mr. Vargas produced the documents at their deposition. Defendants were assured that the WhatsApp chat and embedded information would be produced.

14. On October 24, 2023, Defendants followed up with Plaintiff about the production of the WhatsApp chat. Defendants pointed out that the messages were responsive to both Defendants' subpoenas *duces tecum* and to Defendants' Request for Production. *See* Ex. 6 at p. 1.

15. Instead of having multiple family members produce the WhatsApp chat, which presumably would be the same thread but just from alternating perspectives, the parties agreed that Mr. Polanco would produce the WhatsApp chat thread in its entirety.

16. On October 25, 2023, Plaintiff confirmed that Mr. Polanco would comply with the subpoena.

17. On October 27, 2023, Mr. Polanco produced a Dropbox link containing a screen recording of the WhatsApp chat. This method of production did not allow the parties to view all attachments in their native form. Additionally, the voice messages were inaccessible.

18. On October 31, 2023, Defendants informed Mr. Polanco and Plaintiff's counsel of the issue with the production. *See* Ex. 7.

19. On November 3, 2023, Mr. Polanco re-sent the Dropbox link to include extracted images, videos, and messages from the WhatsApp chat thread. Defendants counsel began assessing the information, which included approximately 680 MB of data and 937 files.

20. By November 16, 2023, Defendants realized that the production was incomplete. Defendants had not reviewed all the data but noticed various gaps and missing files. Defendants counsel created a chart that highlighted the date, time, and sender of the missing files. Defendants continued their review of the data and updated its chart accordingly.

21. On November 16, 2023, the parties completed a telephonic Local Rule 7.1 conference where Defendants advised Plaintiff of the missing files. Defendants also sent Plaintiff the chart which highlighted the omitted files. *See* Ex. 8. The chart was over seventy pages long.

During the Local Rule 7.1 conference, the parties discussed privacy concerns (i.e., revealing photos or sensitive information relating to medical issues). Plaintiff's counsel stated he would look into the issue and advise of his position the following week.

22.   On November 22, 2023, Plaintiff's counsel supplemented the WhatsApp chat production. This second supplemental production made no indication of which documents or files were withheld on the previously mentioned privacy concerns.

23.   Defendants began comparing the first production of 937 files to the supplemental production, which contained over 1,400 files. Defendants had to compare each message and file one-by-one. In addition to running this manual comparison, Defendants attempted to compare both productions to the original screen recording to determine if files were deleted.

24.   Throughout December, Defendants reviewed and compared the files. Reviewing this extent of information was extremely time consuming and tedious, especially as Defendants counsels were preparing for a trial before Judge Martinez and completing expert discovery in this case. *See generally* Defendant's Second Motion for Limited Continuance [ECF No. 75], which was denied.

25.   After reviewing all the files, Defendants highlighted the missing files in the original chart. Defendants were attempting to make it less burdensome for Plaintiff to identify and retrieve the missing files.

26.   The discovery deadline was January 2, 2024. [ECF No. 73].

27.   On January 2, 2024, Defendants counsel advised Plaintiff's counsel that there were *still* missing files. Instead of finishing the prior agreement to produce the information, Plaintiff asserted that Defendants had now waived the right to compel the full production.

28. On January 2, 2024, the dispute arose triggering the 28 day deadline to seek court intervention pursuant to Local Rule 26. At this juncture, Defendants counsel began the process of setting a discovery hearing before Chief Magistrate Judge Torres.

29. Pursuant to Chief Magistrate Judge Torres' standing procedures, to schedule a discovery hearing, counsel must contact chambers telephonically and offer dates that work for both parties. Chief Magistrate Judge Torres holds discovery hearings on Thursdays. Counsel must contact chambers before noon on the Friday preceding the discovery hearing.

30. On January 4, 2024, Plaintiff's counsel advised that he was available on January 11, 2024. After completing the required Local Rule 7.1 conferral and finding dates that both parties were available, Defendants contacted Chief Magistrate Judge Torres' chambers to set the hearing. Defendants' counsel called chambers and left a voicemail on January 5, 2024. Defendants' counsel was able to speak with Chief Magistrate Judge Torres' chambers on January 22, 2024, about setting the hearing. Defendants that the Chief Magistrate Judge Torres was unable to consider the matter because the discovery period was closed.

31. Accordingly, Defendants now seek leave to reopen the discovery period for the sole purpose of resolving the issue with the WhatsApp Chat, namely, to obtain the remainder of the missing information that Mr. Polanco and Plaintiff's counsel agreed to provide in response to the subpoena to Mr. Polanco and as required to be produced in response to Defendants' Requests for Production. This is material and relevant information.

32. Defendants understand that the Chief Magistrate Judge Torres has a full calendar and notes that Chief Magistrate Judge Torres has accommodated undersigned counsel and Defendants in many cases, including recently in another case due to undersigned's illness. This motion is not in any way meant to raise any issue with respect to the setting of the hearing. The

attempts to schedule the hearing are only mentioned to show that Defendants attempted to bring the issue before the Court in a timely manner after it became apparent that all of the information was not produced as agreed to by Plaintiff. This motion is intended only to respectfully seek leave of Court from the Scheduling Order to be allowed to bring the issue before Chief Magistrate Judge Torres so the issue can be resolved on the merits.

33. The request is made in good faith and not for the purpose of delay. This request will not delay trial, which is set for June 3, 2024, or delay any of the pretrial deadlines.

## **MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also John Morrell & Co. v. Royal Caribbean Cruises Ltd.*, 243 F.R.D. 699, 701 (S.D. Fla. 2007) (requiring good cause for an extension to amend pleadings after the deadline in the court's scheduling order). To establish "good cause," the movant has the burden of proving that the scheduling deadline could not have been met despite the movant's diligent efforts to do so. *John Morrell & Co.*, 243 F.R.D. at 701 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end."). In deciding whether to grant motion for continuance, a court may consider the moving party's diligence in efforts to ready a case, the likelihood that need for continuance would be remedied by grant of continuance, the extent to which granting the continuance would inconvenience the court and opposing party, and the extent to which the moving party may suffer harm as a result of denial.

This Court has broad discretion to manage its docket and to grant continuances and extensions of time for good cause shown. Fed. R. Civ. P. 6(b) and 16(b)(4); *see also* S.D. Fla. L.R. 7.1(a)(1)(J). "What constitutes good cause sufficient to justify the modification of a scheduling

order necessarily varies with the circumstances of each case." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1522.2 (3d ed. 2020). Further, it is well settled that this Court enjoys broad discretion regarding its scheduling deadlines, in particular when good cause is shown. *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1269 (11th Cir. 2001).

Good cause to modify a scheduling order may be found to exist when the moving party shows that it diligently assisted the district court with creating a workable scheduling order, that it is unable to comply with the scheduling order's deadlines due to matters that could not have reasonably been foreseen at the time of the issuance of the scheduling order, and that it was diligent in seeking an amendment once it became apparent that the party could not comply with the scheduling order. *See Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009). The parties were diligent in completing discovery and complying with the Court's scheduling order. Good cause exists because Plaintiff did not disclose the information when requested at the outset of discovery. Once aware of the WhatsApp chat, Defendants diligently sought the information throughout the remainder of the discovery period. Plaintiff failed to produce the WhatsApp chat as agreed and as required by Rule 26 and 34.

WHEREFORE, Defendants request the Court grant the relief requested, and all other relief the Court deems proper.

CASE NO.: 23-cv-21040-BB

**Local Rule 7.1(a)(3) Certification**

Pursuant to Local Rule 7.1, counsel for Defendants conferred telephonically with counsel for Plaintiff who opposes the relief sought herein.

> Respectfully submitted,
>
> MASE SEITZ BRIGGS, P.A.
> *Attorneys for Defendants*
> 2601 South Bayshore Drive, Suite 800
> Miami, Florida 33133
> Telephone:   (305) 377-3770
> Facsimile:   (305) 377-0080
>
> By: */s/ William Seitz*
>    WILLIAM R. SEITZ
>    Florida Bar No. 73928
>    wseitz@maselaw.com
>    LAUREN N. CABEZA
>    Florida Bar No. 1025668
>    lcabeza@maselaw.com
>    CHARLOTTE A. ROBINSON
>    Florida Bar No. 1039863
>    crobinson@maselaw.com